LDA

UNITED STATES BANKRUPTCY COURT
DISTRICT OF RHODE ISLAND

In Re: Brushy Brook Development Co., LLC

Debtor

Chapter 7
No. 05-13009

Charles A. Pisaturo Jr., Trustee,

Plaintiff

CA 07 393 ML

v.

A.P. No. 07-01041

Grant Schmidt, M.D. and
Thompson Hine LLP

Defendants

**OBJECTION TO i) DEFENDANTS' MOTION FOR ORDER WITHDRAWING THE REFERENCE AND ii) TO DEFENDANT THOMPSON HINE LLP'S MOTION FOR ORDER DETERMINING THAT CLAIMS IN THE CHAPTER 7 TRUSTEE'S COMPLAINT ARE NON-CORE**

Plaintiff, Charles A. Pisaturo, Jr., Chapter 7 Trustee (the "Trustee") of Brushy Brook Development Co., LLC ("Brushy" or the "Debtor"), hereby objects to: i) the Motion of Thompson Hine LLP ("Thompson Hine") for Order Withdrawing the Reference, to which Defendant Grant Schmidt, M.D. ("Dr. Schmidt") has joined; and to ii) Thompson Hine's Motion for Order Determining that the Claims in the Chapter 7 Trustee's Complaint are Non-Core.

Because the legal issues raised in the referenced motions and in the objections thereto are related, the Trustee, for the sake of efficiency, is presenting one combined objection. As his memorandum in support of this objection, the Trustee respectfully states as follows:

**Summary**

Thompson Hine and Dr. Schmidt neglect to point out to the Court the important, indeed, decisive, fact that they each filed claims in the main case. Having filed claims with this Court,

they have relinquished any right to a jury trial before it, and the adjudication of the Trustee's claims and causes of action against these defendants in this adversary proceeding and their claims against the bankruptcy estate is a "core" matters. Finally, to the extent the Court would nonetheless consider these matters to be "non-core", this Court, based on the factors that bankruptcy courts consider in determining such issues, should continue to adjudicate matters in this adversary proceeding because i) they are related to matters about which the Court is familiar and as to which it has already rendered adjudications in the main case, ii) they are related to numerous matters the Court already has pending both in the main case here and in another case commenced by an involuntary petition (In re Boulder Brook Development, LLC, Chapter 7 No. 07-11840), iii) it has, from all of this, great familiarity with the issues raised in this proceeding and how they affect and implicate (and vice versa) matters pending in such cases and proceedings, and iv) this Court will be rendering what are unquestionably core adjudications involving one or more of these same defendants in another adversary proceeding emanating out of this same main case.

**Background**

Some brief background is necessary to put Thompson Hine's Motion for Order Determining that the Claims in the Chapter 7 Trustee's Complaint are Non-Core, and its and (following his joinder) Dr. Schmidt's Motion for Order Withdrawing the Reference ("Withdrawal of Reference Motion") in their proper context.

1. On August 16, 2005, creditors of Brushy filed an involuntary Chapter 7 bankruptcy petition against the Debtor. After an extensive trial during which it reviewed evidence and heard considerable testimony from Dr. Schmidt and others associated with Brushy about, among other matters, those directly involved in this adversary proceeding, this Court, on

March 1, 2006, entered an order for relief against Brushy.

2. A principal asset of the Brushy bankruptcy estate is its right to be paid $3,227,212.07, and interest thereon, under an August 2005 promissory note with Boulder Brook Development, LLC ("Boulder Brook") as maker, and Brushy as payee (the "$3.2 Million Note"). The $3.2 Million Note was given by Boulder Brook and taken back by Brushy in partial exchange for its transfer of an approximately 375-acre parcel of unimproved real estate known as The Reserve at Brushy Brook in Hopkinton, Rhode Island (the "Hopkinton Property") to Boulder Brook.

3. At the same time it delivered the $3.2 Million Note to Brushy, Boulder Brook also executed and delivered to LR6-A Limited Partnership ("LR6-A L.P.") a promissory note in the original principal face amount of $2.5 million, the terms of which Dr. Schmidt was required to inquire into on behalf of Brushy, and to which he, after consulting with Thompson Hine, agreed. He also agreed for Brushy that Boulder Brook's obligations under the $3.2 Million Note owed to Brushy would be subordinate to upwards of $9.0 million first being paid on the $2.5 million promissory note obligation of Boulder Brook to LR6-A L.P.

4. The $2.5 million promissory note obligation of Boulder Brook to LR6-A L.P., about which this Court is very familiar (through the numerous hearings in the highly contested motion for relief from the automatic stay litigation between the Trustee and LR6-A L.P.'s assignee, LR6-A, LLC, which has been pending before this Court in this main case for several months), provides for a "Base Interest" of 21% "compounded monthly." That promissory note further provides for "Additional Interest," beyond the Base Interest, in an amount equal to the *greater of*

> (i) $1,250,000 [representing 50% of the note's principal amount] less all Base Interest previously paid by Borrowers [sic] [Boulder Brook] during the Loan

term; or

> (ii) All Base Interest payable under this Note less all Base Interest previously paid during the loan term. Additional Interest shall be fully paid regardless of whether the Loan is paid in full, either prior to the Maturity Date or otherwise, as the case may be.

(See §3.2 of such promissory note, marked as an exhibit in the referenced motion for relief from stay litigation)

5. Through this "Additional Interest" component and a default rate of interest of 26% (note at §9.2), interest on the Boulder Brook note to LR6-A, if enforceable, would be at an effective rate of 50% if the obligation had been paid immediately after it was made, and at a gradually reduced effective rate thereafter but under no circumstances less than 26% (as there is a default under that note -- in fact, Boulder Brook, as it turns out, has never paid anything to LR6-A under that promissory note). Additionally, such interest is compounded monthly. The effective interest rate on the obligation, as set forth in the presentation of the LR6-A claim as part of its motion for relief from the automatic stay filed in the main Brushy case, was roughly 30%, as of June 27, 2007.

6. The Trustee, on usury and related grounds, has challenged the enforceability of the $2.5 million promissory note obligation of Boulder Brook to LR6-A L.P. in the main Brushy case, and has also recently filed an involuntary petition against Boulder Brook, in part so that a disinterested trustee might be appointed for Boulder Brook and, if appropriate, join in on the challenge to the validity of that obligation. The Court has already heard considerable argument and received many papers at several hearings on the issue of the background to that obligation and its validity and enforceability under Massachusetts usury law, including whether appropriate notice had been furnished to the Massachusetts Attorney General's Office in the manner

prescribed by Massachusetts General Laws Chapter 271, Section 49.

7. There are no legitimate guaranties by the Boulder Brook principals (Ralph Palumbo and Jonathan Savage) of the $2.5 million promissory note obligation of Boulder Brook to LR6-A L.P., with such guaranties merely being so-called "bad boy" guaranties -- that is, guaranties that "kick in" and for which there is genuine recourse only if the principals undertake some action that would challenge in any way the legal validity or effectiveness of the outrageously excessive interest rates and overall structure of that $2.5 million promissory note obligation and the related transactions entered into and orchestrated by LR6-A L.P. -- and, likewise, supposedly inquired into by Dr. Schmidt.

8. The proceeds from this note funded, in part, the purchase of the Hopkinton Property by Boulder Brook for the stated price of $5.5 million. Of that purchase price, only approximately $2.3 million was paid by Boulder Brook to Brushy or for its benefit. Virtually all of that, roughly $2.2 million, was paid to Brushy's lender for a Brushy obligation that had been personally guaranteed by Dr. Schmidt.

9. Through this adversary proceeding, the Trustee has asserted, among other things, that Brushy's agreement to this transaction by Dr. Schmidt was undertaken without the care, inquiry, examination and due diligence that was required, and represented negligence and was a breach of fiduciary and other duties he owed to Brushy and to others, and that Thompson Hine, which advised and consulted with Dr. Schmidt on such matters, had been negligent in doing so.

**The Dr. Schmidt and Thompson Hine Claims**

10. On September 21, 2006, Dr. Schmidt filed a proof of claim in the main Brushy case for $305,115.44, with the summary attached to his proof of claim (Claim No. 3) reflecting numerous transactions with Brushy, including payments (for which he seeks reimbursement)

made to his co-defendant, Thompson Hine, for and on behalf of Brushy, and also many transactions characterized as "loans" to Brushy (totaling $607,985.44). That summary also reflects, on the other side of the ledger, several round-figure, lump-sum payments made to him by Brushy prior to the bankruptcy filing totaling in excess of $300,000.

11. The Trustee, through a separate adversary proceeding, which will very likely wind up being consolidated with this proceeding, has brought an action against Dr. Schmidt, alleging that he received numerous payments in a preferential (under Code §547) and/or fraudulent manner (under the Uniform Fraudulent Transfer Act and Code §548), and further, that what was so paid to him was an unlawful "payback" of what should have been characterized (or must be recharacterized) not as a loan(s) but as contributions to Brushy's capital by him. That adversary proceeding was commenced at the same time as this proceeding, and bears adversary proceeding docket number A.P. 07-01039. An answer has been filed in that proceeding by Dr. Schmidt, but significantly no request for a jury trial nor motion for a non-core determination has been filed by him in that proceeding.

12. On or about January 18, 2007, Thompson Hine filed in this case a "Motion for Allowance of Administrative Expense Claim" (docket no. 276), through which it presented its claim compensation and reimbursement of expenses from the bankruptcy estate in the combined amount of $81,876.09 for fees and expenses incurred during the so-called "gap" period between August 16, 2005 and February 28, 2006 -- that is, the period between the filing of the involuntary petition against Brushy and the day before this Court's entry of an order for relief in this case.

13. On January 23, 2007, the Trustee filed an objection to that motion and to the claim of Thompson Hine, stating among the grounds for his objection, that:

> Moreover, the Trustee believes there may well be bases for the assertion of claims by him (as the representative of the bankruptcy estate) *against* Thompson Hine and those it represented, including Dr. Grant Schmidt, in connection with the sale of the assets by the debtor and related transactions. While the Trustee's primary focus at this juncture is in preserving certain principal assets and claims, he has information indicating that claims may exist against Thompson Hine, and Dr. Schmidt, as well. Even assuming *arguendo* that Thompson Hine had a valid administrative expense claim, it thus would be offset by the Trustee's claims against it. (emphasis in original)

14. Thus, more than eight months ago it was made evident that the claims of Thompson Hine against the bankruptcy estate would be subject to recoupment or to otherwise being offset by a Trustee claim (as has now materialized through this adversary proceeding) against Thompson Hine.

**By Virtue of Their Having Filed Claims Seeking Payment from this Bankruptcy Estate, Dr. Schmidt and Thompson Hine Have No Right To Assert a Right to a Jury Trial, and The Adjudication of the Trustee's Claims Against Them and Their Claims Against the Assets of This Bankruptcy Estate are Core Matters.**

*No Right to Jury Trial*

15. It is black-letter bankruptcy law that one who has filed a claim in a bankruptcy case has, by doing so, subjected itself to the bankruptcy court's equitable power, and has thus relinquished any right to a jury trial. *In re Langenkamp v. Culp,* 498 U.S. 42, 44, 111 S.Ct. 330, 112 L.Ed.2d 343 (1990), the Supreme Court stated that:

> In *Granfinanciera* we recognized that by filing a claim against a bankruptcy estate the creditor triggers the process of "allowance and disallowance of claims," thereby subjecting himself to the bankruptcy court's equitable power. *Granfinanciera, S.A. v. Nordberg,* 492 U.S. 33, 58-59 & n. 14, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989) and *Katchen v. Landy,* 382 U.S. 323, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966).

The First Circuit, in *In re Adams v. Cumberland Farms, Inc.,* 86 F.3d 1146, 86 F.3d 1146 (1st

Cir. 1996), relying on *Langenkamp,* stated:

> Specifically, with respect to Adams' Seventh Amendment argument, filing a proof of claim in a bankruptcy proceeding, as Adams has done, generally waives any right to a jury trial. *See Langenkamp v. Culp,* 490 U.S. 42, 44-45 (1990) (filing proof of claim invokes bankruptcy court's equitable jurisdiction and generally waives jury trial right).

16. Expounding on this, and relying on First Circuit authorities on this point, the court very recently in *In re Bank of New England Corporation*, 360 B.R. 1 (D. Mass 2007) stated that:

> In *Langenkamp,* the Supreme Court decided, in brief, that whether a party was entitled to a jury trial in a preference action brought by the trustee of the estate turned on whether that party had triggered the claims allowance process of the bankruptcy court by filing a proof of claim against the estate. 498 U.S. at 44-45, 111 S.Ct. 330; *see also Granfinanciera,* 492 U.S. at 58, 109 S.Ct. 2782 (stating "a creditor's right to a jury trial on a bankruptcy trustee's preference claim depends upon whether the creditor has submitted a claim against the estate."). The Court concluded that the respondents, who had timely filed proofs of claim, had submitted themselves to the equitable jurisdiction of the bankruptcy court and therefore were no longer entitled to a jury trial. *Langenkamp,* 498 U.S. at 45, 111 S.Ct. 330.

17. The two chief reasons offered by Thompson Hine for withdrawing the reference as to this proceeding[1] are its assertions that it is entitled to a jury trial and that the Trustee's claims are non-core. Supreme Court precedent unquestionably establishes that, having filed a claim against the bankruptcy estate, Thompson Hine simply has no right to a jury trial. Additionally, where it has filed its claim against the estate and where (as Thompson Hine was informed by the Trustee some nine months ago) the Trustee's claims against Thompson Hine set forth in this proceeding offset those asserted against the estate, the adjudication of all of these claims by this Court is a core proceeding, as the statutory and case law set out below clearly

---

1. It would appear that the true, albeit unexpressed, purpose of Thompson Hine's motions are to forum shop. Nowhere in those motions or in their supporting memoranda will one find any reference to the altogether determinative point that Thompson Hine itself filed a very substantial claim in this case, nor does one see in the joinder of the motion to withdraw reference by Dr. Schmidt any reference to the very substantial claim asserted by Dr. Schmidt.

establish.

*The Claims are "Core" Matters*

18. The *non*-exhaustive list of "core" proceedings set forth in 28 U.S.C. §157 (b)(2) include matters relating to the "allowance or disallowance of claims against the estate," and "counterclaims by the estate against persons filing claims against the estate." 28 U.S.C. §§157(b)(2)(B) & (C). *See In re Iridium Operating LLC*, 285 B.R., 822, 830 (S.D.N.Y., 2002) In *In re Iridium Operating LLC*, the court noted that:

> The Supreme Court has recognized that "by filing a claim against a bankruptcy estate the creditor triggers the process of 'allowance and disallowance of claims,' thereby subjecting himself to the bankruptcy court's equitable power."*Langenkamp v. Culp,* 498 U.S. 42, 44, 111 S.Ct. 330, 112 L.Ed.2d 343 (1990) (per curiam) (internal citations omitted). The Second Circuit has similarly noted that "when a creditor files a proof of claim, the bankruptcy court has core jurisdiction to determine that claim, even if it was a prepetition contract claim arising under state law." *S.G. Phillips,* 45 F.3d at 705 (citing *Gulf States Exploration Co. v. Manville Forest Products Corp. (In re Manville Forest Products Corp.),* 896 F.2d 1384, 1389-90 (2d cir.1990)).

*Id.*

19. Later, after analyzing the Supreme Court and circuit courts of appeals authorities on this issue, the court in *In re Iridium Operating LLC* concluded that:

> An adversary proceeding against a creditor who has filed a proof of claim against the estate is core because under §157(b)(2)(B) the adversary proceeding would affect the allowance or disallowance of the creditor's claim. *See Gulf States Exploration Co. v. Manville Forest Products Corp.,* 896 F.2d 1384, 1389-90 (2d Cir.1990). (internal citations omitted). In addition, claims in an adversary proceeding are tantamount to counterclaims against a creditor who filed a claim against the estate under §157(b)(2)(C). (citations omitted).

20. In *In re Arnold Print Works, Inc.,* 815 F.2d 165, 166-67 (1st Cir.1987), the First Circuit held that a bankruptcy court's core authority should be interpreted broadly. As such, it has been repeatedly within this circuit and elsewhere that the mere fact that a claim arises under or turns on state law is in large part immaterial, as the court in *Bank of New England*

*Corporation*, 360 B.R. at 8 (D. Mass 2007) held:

> The mere fact that resolution of the dispute turns on the application of state law does not make any difference. *See* 28 U.S.C. § 157(b)(3) (mandating that "[a] determination that a proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be affected by State law."); *Arnold Print Works, Inc. v. Apkin (In re Arnold Print Works, Inc.),* 815 F.2d 165, 168, 169 (1st Cir.1987) (stating that "Congress intended that 'core proceedings' would be interpreted broadly, close to or congruent with constitutional limits" and that "it is the nature of the proceeding--its relation to the basic function of the bankruptcy court--not the state or federal basis for the claim, that makes the difference" when determining whether a proceeding is core).

21. Similarly relying on the First Circuit's analysis in *Arnold Print Works*, the court in *In re Adelphia Communications Corp.,* 307 B.R. 404 (S.D.N.Y., 2004) noted that:

> The *Arnold Print Works* analysis, in an opinion authored by then Judge, now Supreme Court Justice, Breyer, has frequently been cited by the Second Circuit and other courts in analysis of *Marathon* and its Supreme Court progeny. 307 B.R. at 416, note 37.
>
> * * *
>
> With both the caselaw and legislative history to guide it, the First Circuit, in *Arnold Print Works,* held that in the matter before it--a suit by the estate, as plaintiff, on a breach of a *post*-petition contract--was core, even though it was a suit for breach of contract under state law. The First Circuit held first that the contract in question was covered under at least two of the subsections of §157(b)(2), and then held that deeming the matter to be core was constitutionally permissible. In connection with its first holding, the First Circuit noted the legislative intent of §157 that " 'core proceedings' would be interpreted broadly, close to or congruent with constitutional limits," and that jurisdiction in core bankruptcy proceedings would be "broader than the summary jurisdiction under pre 1978 law."
>
> It is with this understanding that the Second Circuit and courts in this district have consistently held adversary proceedings against a creditor that have traditionally been non-core to be core pursuant to §§157(b)(2)(B) and (c) due to the filing of a proof of claim or counterclaim of set-off/recoupment by that creditor.

*See also, In re Billing v. Ravin, Greenberg & Sackin, P.A.*, 22 F.3d 1242 (3rd Cir. 1993, 1994), *In re Adelphia Communications Corp.,* 307 B.R. 404 (S.D.N.Y., 2004), and *In re Asousa Partnership*, 276 B.R. 55 (Bankr.E.D.Pa. 2002), each holding that for these purposes it is immaterial whether the claim asserted by the creditor (the party against whom an adversary

proceeding has been commenced) is a pre or a post-petition claim.

*No Basis Remains for Withdrawing the Reference*

22. With it having been established that the defendants have no right to a jury trial and that the claims here are core matters, there is no legitimate remaining basis for withdrawing the reference. Nonetheless, the Trustee will very briefly discuss the remaining withdrawal of reference factors set out in *Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.),* 4 F.3d 1095, 1101 (2d Cir.1993) and relied upon by the defendants -- that "the interests of judicial efficiency, uniformity of the bankruptcy laws and economical use of the parties' resources establish that the withdrawal of the reference of this adversary proceeding is warranted". *See* Memorandum in Support of Withdrawal of Reference Motion at p. 6.

23. The failure of Thompson Hine to reference not only the fact of its filing of a claim but also *any* of the factual and procedural background, cited by the Trustee above, which clearly establish the interrelatedness of the claims of Thompson Hine against the estate, renders entirely suspect its rote recitation of such remaining factors and its implied, but never explained, assertion that they militate in favor of this Court withdrawing the reference. What is clear from an understanding of the extensive background set forth here is that there are matters that this Court has heard and adjudicated upon, and that it will continue to hear and render adjudications upon, that directly implicate the Trustee's claims against these defendants. As such, *none* of the factors relating to judicial economy and the efficient use of the parties' resources militate in favor of withdrawing the reference. And what unquestionably weighs in favor of this Court denying both of the motions is this Court's familiarity with the factual background and issues that will be presented to it in this proceeding and their interconnectedness with and direct relation to other contested matters pending in the case, and to at least on other adversary proceeding. Indeed,

what was said by the court in *Bank of New England Corporation*, 360 B.R. at 8 (D. Mass 2007), where that district court declined to withdraw the reference, could be said with at least equal force and relevance here:

> Even if the proceeding were non-core, I still would decline to exercise my discretion to withdraw the reference. It is true that the rulings of bankruptcy judges in non-core matters are subject to *de novo* review by the district courts and that this has, in some circumstances, been considered grounds for withdrawal of the reference. The justification for such decisions has typically been that bypassing the bankruptcy court will promote judicial efficiency and economy, *see Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.),* 4 F.3d 1095, 1101 (2d Cir.1993) (discussing cases). That would not be the case here, however, where the bankruptcy judge has extensive experience with the case generally and the series of disputes between these parties more specifically. The present proceeding will benefit greatly from the attention of the bankruptcy court most familiar with it and will be resolved most expeditiously in that forum.

## CONCLUSION

For these reasons, the Court should deny the Motion for Order Withdrawing the Reference, and the Motion for Order Determining that the Claims in the Chapter 7 Trustee's Complaint are Non-Core; and grant the Trustee such other and further relief as is just.

Charles A. Pisaturo, Jr., Chapter 7 Trustee of
Brushy Brook Development Co., LLC.
By his Attorney,

October 15, 2007

/s/ Matthew J. McGowan

Matthew J. McGowan, Esquire
Salter McGowan Sylvia & Leonard, Inc.
321 South Main Street
Providence, RI 02903
(401) 274-0300
(401) 453-0073 Fax
(Bar No. 2770)

UNITED STATES BANKRUPTCY COURT
DISTRICT OF RHODE ISLAND

In Re: Brushy Brook Development Co., LLC

Debtor

Chapter 7
No. 05-13009

Charles A. Pisaturo Jr., Trustee,

Plaintiff

v.

A.P. No. 07-01041

Grant Schmidt, M.D. and
Thompson Hine LLP

Defendants

**CERTIFICATE OF SERVICE**

I hereby certify that I have this date electronically filed an **OBJECTION TO i) DEFENDANTS' MOTION FOR ORDER WITHDRAWING THE REFERENCE AND ii) TO DEFENDANT THOMPSON HINE LLP'S MOTION FOR ORDER DETERMINING THAT CLAIMS IN THE CHAPTER 7 TRUSTEE'S COMPLAINT ARE NON-CORE** in this case with the Clerk of this Court using the CM/ECF System. The following are CM/ECF System participants in this case eligible to receive notice of the filing of such paper(s) electronically:

Joseph Avanzato, Esq. javanzato@apslaw.com

William M. Dolan, III, Esq. wdolan@brownrudnick.com

John A. Tarantino, Esq. jtarantino@apslaw.com

I further hereby certify that I have this date served a copy of the above-referenced paper(s) on the following non CM/ECF participants by first class mail, postage prepaid, at the addresses noted below:

October 15, 2007 /s/ Matthew J. McGowan

F:\Contents\Brushy Brook\Adversary Proceeding Cases\AP 1041-Grant,Thompson-Hine, RFP Negl, Fiduc + Duties\Obj to Mot W-draw Ref + Mot Determin Non-Core.doc